1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ENRIQUE BARRERA,                        No.  2:14-cv-2260 JAM DB P

12                  Petitioner,

13        v.                                  FINDINGS AND RECOMMENDATIONS

14   W.L. MUNIZ,

15                  Respondent.

16

17        Petitioner, Enrique Barrera, is a state prisoner proceeding pro se and in forma pauperis

18   with a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Barrera challenges a

19   judgment of conviction entered against him on December 14, 2011 in the Solano County Superior

20   Court for one count of assault by a life prisoner with personal infliction of great bodily injury and

21   one count of possession of a weapon while confined in a penal institution.  Barrera seeks federal

22   habeas relief on the following grounds:  (1) the trial court's refusal to give a modified instruction

23   on imperfect self-defense was prejudicial error; (2) the instructional error deprived him of the

24   opportunity to present a defense that he lacked the requisite malice and deprived him of his

25   federal and state constitutional rights to due process; (3) the evidence was insufficient to establish

26   that he acted with malice; (4) the evidence was insufficient to establish that he did not act in self-

27   defense.  As discussed below, Barrera's habeas petition should be denied.

28   ////

                                               1

# I. BACKGROUND

## A. Factual Background

In an unpublished opinion affirming Barrera's conviction, the California Court of Appeal for the First Appellate District provided the following factual summary:

On February 14, 2010, Barrera was an inmate at the California State Prison facility in Solano, serving a life term for torture. At about 6:20 a.m., Correctional Officers Dante Viloria and Juan Granadoz observed Barrera beating a fellow inmate, Guillermo Chavez. No other inmates were near them at the time. Officer Granadoz observed Barrera "striking Chavez in the facial area . . . several times" with both hands. Chavez was "on the ground, like in a fetal position, trying to cover his face." Viloria observed Barrera "on top of Inmate Chavez . . . continuously punching on Inmate Chavez on the head and the facial area . . . with closed fists." Chavez was "tr[ying] to protect himself, but he just got overpowered by Inmate Barrera."

Granadoz and Viloria ordered the prisoners to "stop fighting" and ordered Barrera to "get down," but he did not comply. They sprayed both inmates with pepper spray in the facial area, but Barrera continued to punch Chavez. After he ran out of pepper spray, Granadoz "transitioned to [his] baton" in order to "get [Barrera] off of Mr. Chavez." He struck Barrera with the baton in the left leg once, but Barrera continued hitting Chavez. Barrera finally stopped hitting Chavez when one of the prison's roof gunners shot a rubber bullet at him, hitting him in the back. Officers were then "able to get Mr. Barrera off of Chavez, onto the ground . . . to handcuff him and escort him to the Center Complex."

Barrera claimed Chavez prevented him from complying with the officers' orders to stop fighting because Chavez had grabbed his arm. Granadoz never saw Chavez hit Barrera, explaining "[Chavez] was pretty much defending himself at the time of the incident." Viloria observed Chavez and Barrera initially "exchanging blows," but then Chavez was "tr[ying] to protect himself."

After the officers pulled Barrera off Chavez, they noticed Chavez had a "very thin piece of metal, sticking out of his left eye [that] . . . was hard to notice at first because there was a lot of blood." He also had a bruise on the left side of his head. They escorted Chavez to the prison clinic, where nurses called an ambulance. He was transported to VacaValley Hospital, then transferred to U.C. Davis Medical Center because of the severity of his injuries. A surgeon removed a "[m]etal-looking wire" from his eyeball and closed the wound with sutures. The wire was "a little over two inches long . . . broken off on one end [with] . . . a sharp point at the other end." A laceration above Chavez's eye was also closed with sutures. In contrast, the correctional officers observed no injuries on Barrera.

Barrera claimed he did not have a weapon or puncture Chavez's eyeball with the wire, and he punched Chavez in either self-defense or imperfect self-defense. He

testified that when he greeted Chavez that morning as they exited the building, he put his hand over Chavez's shoulder and Chavez turned around and struck him on his inner elbow, "like a sting, rubber-band type of thing." The "sting" caused "a little redness, with like a hole, scratch mark." He saw Chavez drop an object, but could not see what it was. Barrera "tried to step back" while Chavez approached him "with hands up." He did "[w]hat anybody would do. I tried to defend myself. [¶] . . . [¶] I tried to subdue the subject and take him down." He admitted he punched Chavez with his fists, but denied "strik[ing] Mr. Chavez with a piece of wire." Barrera's attorney asked him "Did you feel, at this point, after Mr. Chavez struck you, that you were in danger of being injured?" Barrera responded "Well, um, it's interesting. When you are in prison, when something like this happens, of course." Later, on redirect examination, his attorney asked: "[B]ased on what Mr. Chavez did in the yard, when he struck you, did [you] feel you needed to defend yourself?" Barrera responded "Very much."

Barrera testified his prison paperwork mistakenly identified him as a sex offender by putting an "R" after his name, and Chavez had seen this paperwork. Fermin Rubio, a retired correctional officer and investigator, testified an "'R' suffix is placed on an inmate classification score" if he or she "has a requirement to register as a sex offender." This would include someone who had been convicted of child molestation. Rubio stated other inmates look upon child molesters "with disdain," it is "not impossible for another inmate to have access to [a] piece of mail" that might contain the "R" suffix, and a prisoner with an "R" suffix would have "reason to be concerned out in the general population." Rubio had not interviewed Chavez, however, to determine if he knew about Barrera's background.

People v. Barrera, A134600, 2013 WL 1802667, at *1–2 (Cal. Ct. App. Apr. 30, 2013)

(alterations in original).[1]

On federal habeas review, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)); Davis v. Ayala, 135S.Ct. 2187, 2199-2000 (2015) (citation omitted) ("State-court factual findings . . . are presumed correct; the petition has the burden of rebutting the presumption by clear and convincing evidence."). Unless, the petitioner submits clear and convincing evidence to the contrary, a federal habeas court may rely on a state appellate court's recitation of the facts to rule on a habeas petition. See id.

////

////

---

[1] A copy of the Court of Appeal's opinion can also be found in an attachment to the state's answer. (ECF No. 33-3 at 138–47.)

3

This procedure is particularly appropriate where the petitioner "has [not] challenged these findings." Slovik v. Yates, 556 F.3d 747, 749 n.1 (9th Cir. 2009); see also Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009); Tilcock v. Budge, 538 F.3d 1138, 1141 (9th Cir. 2008).

Here, Barrera challenges only a few immaterial details of the Court of Appeal's determination of the facts. For instance, whereas the Court of Appeals determined that Officer Granadoz struck only Barrera with the baton, Barrera asserts that he struck both him and Chavez. Compare Barrera, 2013 WL 1802667, at *1, with (ECF No. 42 at 8.) Likewise, whereas the Court of Appeal determined that a roof gunner shot Barrera in the back with the rubber bullet, Barrera asserts that the gunner tried to hit him but hit Chavez instead. Compare Barrera, 2013 WL 1802667, at *1, with (ECF No. 42 at 10.) Therefore, the court will rely on the Court of Appeal's recitation of the facts to rule on the instant habeas petition. In any event, the court has reviewed the record and finds that it supports the Court of Appeal's factual determinations. Compare Barrera, 2013 WL 1802667, at *1–2, with (ECF No. 33 & Exs. 1–10.)

## B.    Procedural Background in State Court

"The Solano County District Attorney charged Barrera with assault by a life prisoner with personal infliction of great bodily injury (Pen. Code, §§ 4500, 12022.7, subd. (a)) and possession of a weapon while confined in a penal institution. (§ 4502.)" Id. at *2. "The information also alleged Barrera had a prior serious felony conviction (§ 667, subd. (a)), a prior strike conviction (§ 1170.12), and two prison priors. (§ 667.5, subd. (b).)." Id. "A jury found Barrera guilty of both offenses and found the enhancing allegation true." Id.; see also (ECF No. 33-1 at 120–21.) "The court sentenced him to 12 years to life for the assault by a life prisoner charge (nine years for the assault and three years for the allegation of infliction of great bodily injury)." Barrera, 2013 WL 1802667, at *2. "The court also sentenced him to two years for the custodial possession of a weapon, five years for the prior felony conviction allegation and one year for the prior prison term allegation." Id. at *2; see also (ECF No. 33-1 at 151–57.)

////

////

////

4

On April 30, 2013, the California Court of Appeal stayed the two-year sentence for the custodial possession of a weapon but otherwise affirmed the trial court's judgment.  Barrera, 2013 WL 1802667, at *5.  The California Supreme Court denied the petition for review on July 10, 2013.  (ECF No. 33-3 at 195.)

### C.     Procedural Background in Federal Court

On September 29, 2014, Barrera filed a habeas petition in the Eastern District of California.  (ECF No. 1.)  In this habeas petition, Barrera asserted the following claims: (1) the court's refusal to give a modified instruction on imperfect self-defense was prejudicial error; (2) the instructional error deprived him of the opportunity to present a defense that he lacked the requisite malice and deprived him of his federal and state constitutional rights to due process; (3) the evidence was insufficient to establish that he acted with malice; (4) the evidence was insufficient to establish that he did not act in self-defense; and (5) the sentence on the weapon possession charge should have been stayed pursuant to California Penal Code § 654.  (ECF No. 32-1 at 8; ECF No. 42 at 6.)

On December 10, 2014, the state moved to dismiss.  (ECF No. 11.)  The state argued that Barrera failed to exhaust administrative remedies because he failed to raise claims (3)–(5) in his petition for review in the California Supreme Court.  (Id. at 3.)  Furthermore, the state asserted that claim (5) was moot because the California Court of Appeal granted the requested relief.  (Id. at 3 n.2.)

On January 1, 2015, Barrera moved to amend his habeas petition to delete claim (5) and to stay the case so that he could exhaust claims (3) and (4).  (ECF No. 14 at 1.)  On February 18, 2015, he filed a habeas petition in the Solano County Superior Court, which was denied on June 4, 2015.  (ECF No. 28 at 79–81.)

On November 11, 2015, the court adopted findings and recommendations issued on July 23, 2015.  (ECF Nos. 19, 23.)  The court granted the state's motion to dismiss and denied Barrera's motion to stay.  (ECF No. 19 at 6.)

////

////

5

1    Further, the court ordered Barrera to file an amended habeas petition containing only his

2    exhausted claims (i.e., claims (1) and (2)), or to file the amended petition with a motion to stay

3    pursuant to Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003).  (Id. at 7.)

4         On December 16, 2015, the California Supreme Court summarily denied Barrera's habeas

5    petition, citing In re Dexter, 25 Cal. 3d 921, 925–26 (1979).  (ECF No. 28 at 78.)

6         On January 6, 2016, the court noted that the California Supreme Court denied Barrera's

7    habeas petition.  (ECF No. 27 at 2.)  Thus, the court ordered him "to file a second amended

8    petition containing all of his exhausted claims."  (Id.)

9         On February 10, 2016, Barrera filed a second amended habeas petition ("second habeas

10   petition"), which is the operative petition.  (ECF No. 28.)  In his second habeas petition, Barrera

11   re-alleges claims (1)–(4) above.  (See ECF No. 28 at 3–12; see also ECF No. 4 at 11, 16, 19, 31.)

12        The state responded to the second habeas petition on May 16, 2016.  (ECF No. 32.)

13   Regarding claim (1), the state contends that "[t]he state's court's determination that the imperfect

14   self-defense instruction was correct under state law is binding on this Court."  (ECF No. 32-1 at

15   12.)  Concerning claim (2), the state contends that, because no instructional error occurred,

16   Barrera was not "deprived of his right to present a defense of imperfect self-defense based on his

17   [allegedly] honest but unreasonable belief that he was in imminent danger of suffering some

18   bodily harm, even if not great."  (Id. at 14.)  As to claims (3) and (4), the state argues that they are

19   untimely, unexhausted, procedurally defaulted, and substantively meritless.  (Id. at 15–24.)

20        On August 30, 2016, Barrera filed a traverse.  (ECF No. 42.)  Regarding claim (1),

21   Barrera asserts that his allegedly actual belief that he was in imminent danger of bodily harm—as

22   opposed to "great" bodily harm—negated the "malice aforethought" element of the crime of

23   assault by a life prisoner with personal infliction of great bodily injury.  (Id. at 12.)  Regarding

24   claim (2), he asserts that the alleged instructional error deprived him of his due process rights to

25   present a defense.  (Id. at 16.)

26   ////

27   ////

28   ////

Barrera asserts that claims (3) are (4) are timely, exhausted, and not procedurally defaulted for three reasons: (1) <u>In re Dexter</u> allegedly does not apply to criminal cases; (2) he pursued his claims before the California Court of Appeals; and (3) his counsel rendered ineffective assistance by failing to raise these claims before the California Supreme Court.  (<u>See</u> <u>id.</u> at 19–20.)

Also, Barrera asserts that both claims are substantively meritorious because the evidence was insufficient to prove that he acted with malice and not in self-defense.  (<u>See</u> <u>id.</u> at 23–35.) Following is the court's summary of Barrera's characterization of his evidence, much of which he contends the state failed to refute:

> Chavez stabbed him in his inner elbow with a sharp object, which fell to the ground.  (<u>Id.</u> at 23.)  Then Chavez came after him with his hands up.  (<u>Id.</u>)  Barrera defended himself, they wrestled, and he overpowered Chavez.  (<u>Id.</u>)  They continued to fight because Chavez had a hold of his arm and would not let go, and he thought that Chavez might still injure him.  (<u>Id.</u> at 23–25.)  He believed he had to defend himself.  (<u>Id.</u> at 23.)  He did not possess the wire that was found in Chavez's eye or stab Chavez with it.  (<u>Id.</u>)

> None of the state's witnesses saw how the fight started or saw him possess the wire.  (<u>Id.</u>)  Although some witnesses said that he was uninjured, they did not testify that they inspected him for injuries.  (<u>See</u> <u>id.</u> at 23–24.)

> The state's witnesses' testimony about what they saw after the fight started is inconsistent.  (<u>Id.</u> at 24.)  For instance, Officer Granadoz testified that Barrera "struck Chavez with both of his fists while Chavez was on the ground in a fetal position and Barrera was laying on top of him."  (<u>Id.</u>)  By contrast, Officer Vicoria testified that, "when the men were on the ground, Chavez was on his back on the concrete, and [Barrera] was kneeling over him and punching him."  (<u>Id.</u>)

> The state did not rebut Barrera's testimony that he never had words or an altercation with Chavez before the fight.  (<u>Id.</u> at 25.)  Nor did the state refute that he had mistakenly been given an R classification, designating him as a sex offender.  (<u>Id.</u>)  Therefore, Chavez had a motive to attack Barrera, but not the other way around.  (<u>See</u> <u>id.</u>)

> Also, even if there was sufficient evidence to conclude that Barrera stabbed Chavez in eye with the wire, that does not "reflect an intent to kill or an act dangerous to human life."  (<u>Id.</u> at 26.)  It only "was a small piece of wire a little more than two inches long and with a sharp edge."  (<u>Id.</u>)  That it ended up in Chavez's eye and needed surgery to remove does not establish great bodily injury or force likely to produce great bodily injury.  (<u>Id.</u>)  The wire could have ended up

there accidentally while they were wrestling.  (Id. at 28.)

The only injury that Barrera's fists caused were a bruise on Chavez's head.  (Id.)
"The inferences the jury would have had to make to find that [he] acted with
malice in this case are simply too long a stretch to be considered reasonable." (Id.
at 29.)  Likewise, "[t]o infer from [the] facts that Barrera did not act in self-
defense, or that the wire did not end up in Chavez's eye by accident while the men
were wrestling, is too great an inferential leap." (Id. at 35.)

## II.    STANDARD OF REVIEW

An application for a writ of habeas corpus by a person in custody under a judgment of a

state court can be granted only for violations of the Constitution or laws of the United States.  28

U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (per curiam); Estelle v.

McGuire, 502 U.S. 62, 67–68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the
> > State court proceeding.

Under § 2254(d)(1), "clearly established Federal law" consists of Supreme Court

"precedents as of the time the state court renders its decision." Greene v. Fisher, 565 U.S. 34, 38

(2011) (citation and emphasis omitted); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011)

(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  Yet "circuit court precedent may be

persuasive in determining what law is clearly established and whether a state court applied that

law unreasonably." Stanley, 633 F.3d at 859 (citation omitted).  However, circuit court precedent

may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a

specific legal rule that [the Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct.

1446, 1450 (2013) (per curiam) (citations omitted). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct. Id. at 1451 (citations omitted). Furthermore, if courts of appeals have "diverged widely" in their treatment of an issue, it cannot be said that "clearly established Federal law" governs that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

Under § 2254(d)(1), a state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (citations omitted).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (citation omitted); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004) (citing Andrade, 536 U.S. at 75). A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Williams, 529 U.S. at 411. "Rather, that application must also be unreasonable." Id.; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citation omitted) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); Lockyer, 538 U.S. at 75 (citation omitted) ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous."). Thus, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). In other words, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

## III.   ANALYSIS

### A.   Whether the trial court's refusal to give a modified instruction on imperfect self-defense was prejudicial error

As noted, "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle, 502 U.S. at 71–72 (citation omitted). "Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in [some way]." See id. at 72. Rather, the only question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. (citing cases). This standard is demanding. See id. at 72–73.

Consistent with these principles, where the state court holds that jury instructions "correctly set forth state law, . . . it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Waddington v. Sarausad, 555 U.S. 179, 192 n.5 (2009) (citation omitted).[2] This rule applies with added force where, as here, "the highest court in the state has denied review of the lower court's decision." Sarausad v. Porter, 503 F.3d

---

[2] See also Coleman v. Johnson, 132 S. Ct. 2060, 2064 (2012) (per curiam) (citation omitted) ("[F]ederal courts must look to state law for the substantive elements of the criminal offense."); Hicks v. Feiock, 485 U.S. 624, 629 (1988) (holding that state appellate court did not err in determining the elements of the offense of contempt because the federal habeas courts "are not at liberty to depart from the state appellate court's resolution of these issues of state law"); Mendez v. Small, 298 F.3d 1154, 1158 (9th Cir. 2002) (citation omitted) ("A state court has the last word on the interpretation of state law."); Solis v. Garcia, 219 F.3d 922, 927 (9th Cir. 2000) (citations omitted) ("We accept, as we must, the California Supreme Court's identification of the elements of the offense."); Stanton v. Benzler, 146 F.3d 726, 728 (9th Cir. 1998) (citations omitted) (holding that state court's determination on what constitutes "an element of the offense . . . is not open to challenge on habeas review"); Melugin v. Hames, 38 F.3d 1478, 1487 (9th Cir. 1994) ("[The Ninth Circuit] must accept a state court ruling on questions of state law.").

10

1   822, 824 (9th Cir. 2007) (citing <u>Hicks</u>, 485 U.S. 624, 629–30 & n.3; <u>West v. Am. Tel. & Tel.</u>

2   <u>Co.</u>, 311 U.S. 223, 237 (1940)); <u>see also</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) (per

3   curiam) (citations omitted) ("[A] state court's interpretation of state law, including one announced

4   on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

5          Here, the California Court of Appeal rejected Barrera's contention that the trial court erred

6   in refusing to give a modified instruction on imperfect self-defense.  The Court reasoned as

7   follows:

8

9          Barrera contends the trial court erred in refusing his proposed modification of
           CALCRIM No. 571 defining imperfect self-defense.  He asserts the instruction
10         given by the court was erroneous because it required the jury to find he believed he
           was in imminent danger of great bodily injury rather than "any bodily injury."
11
           Imperfect self-defense is a doctrine negating the mental state of malice
12         aforethought (*People v. Michaels* (2002) 28 Cal. 4th 486, 529), one of the required
           elements of the crime of assault by a life prisoner.  (§ 4500.)  Section 4500
13         provides in pertinent part: "Every person while undergoing a life sentence, who is
           sentenced to state prison within this state, and who, with malice aforethought,
14         commits an assault upon the person of another with a deadly weapon or
           instrument, or by any means of force likely to produce great bodily injury is
15         punishable with death or life imprisonment without the possibility of parole . . . ."
           (§ 4500.)  "[M]alice and malice aforethought are not synonymous. [. . .]  Malice
16         aforethought as used in section 4500 has the same meaning as it has for murder
           convictions, requiring either an intent to kill or 'knowledge of the danger to, and
17         with conscious disregard for, human life.'" (*People v. Jeter* (2005) 125 Cal. App.
           4th 1212, 1216, citing *People v. St. Martin* (1970) 1 Cal. 3d 524, 536–537.)
18
           Imperfect self-defense requires an "'honest but unreasonable belief that it is
19         necessary to defend oneself from imminent peril to life or great bodily injury."  (*In
           re Christian S.* (1994) 7 Cal. 4th 768, 773, italics omitted, quoting *People v.
20         Flannel* (1979) 25 Cal. 3d 668, 674.)  That actual belief, even if not objectively
           reasonable, negates the mental state of malice aforethought.  (*In re Christian S.*, at
21         p. 773.)  "[I]mperfect self-defense precludes a finding of malice [aforethought]
           where [it] is an element of the charge. . . . "  (*People v. Rios* (2000) 23 Cal. 4th
22         450, 463.)  "[It] obviates malice because that most culpable of mental states
           "cannot coexist" with an actual belief that the lethal act was necessary to avoid
23         one's own death or serious injury at the victim's hand."  (*Ibid.*)
24
           Barrera maintains the trial court erred in instructing the jury with CALCRIM No.
25         571, defining imperfect self-defense, because it requires an actual but
           unreasonable belief in the necessity to defend oneself against imminent peril to life
26         or great bodily injury.  He claims "imperfect self-defense in the non-homicide
27

28

context requires an actual but unreasonable belief that the person is in danger of suffering any bodily injury, not just death or great bodily injury."

Barrera cites no case in which an imperfect self-defense instruction was modified in the way he sought by eliminating the requirement that the bodily injury feared must be great. The reason for the absence of any such case is apparent—the doctrine of imperfect self-defense only negates the mental state of malice aforethought, and thus does not apply to crimes without that requirement. (*See People v. Minifie* (1996) 13 Cal. 4th 1055, 1069 ["this case involves an assault, not a homicide, and thus no question of imperfect self-defense is presented"]; *People v. Szadziewicz* (2008) 161 Cal. App. 4th 823, 835–836 [the theory of unreasonable self-defense does not apply to mayhem or aggravated mayhem because neither require the mental state of malice aforethought, only malice]; *People v. Vital* (1996) 45 Cal. App. 4th 441, 446 [imperfect self-defense inapplicable to crime of torture].) The doctrine does not apply based on the actus reas of the crime.

Barrera instead cites cases involving "perfect" or complete self-defense in cases involving assault or battery. "Perfect" self-defense, in contrast to imperfect self-defense, is a complete justification for the crime, not merely a negation of a required mental state. (*People v. Randle* (2005) 35 Cal. 4th 987, 994, *overruled on another ground in People v. Chun* (2009) 45 Cal. 4th 1172, 1201.) Indeed, the crimes of assault and battery, unlike the crime of assault by a life prisoner, do not include malice aforethought as the required mental state—rather, both are general intent crimes. (*People v. Williams* (2001) 26 Cal. 4th 779, 788 (assault); *People v. Hayes* (2006) 142 Cal. App. 4th 175, 180 (battery).) Thus, the cases cited by Barrera are inapposite, and the trial court did not err in refusing his proposed modification to the jury instruction on the doctrine of imperfect self-defense.

<u>Barrera</u>, 2013 WL 1802667, at *2–3.

As explained above, federal habeas relief is unavailable to challenge the California Court of Appeal's determination that CALCRIM No. 571 correctly defines imperfect self-defense. This is especially the case because the California Supreme Court denied review of its decision. Accordingly, Barrera's first claim lacks merit.

**B.**     **Whether the alleged instructional error deprived Barrera of the opportunity to present a defense that he lacked the requisite malice and deprived him of his federal and state constitutional rights to due process**

Barrera's second claim presumes the validity of his first claim. However, as shown above, the California Court of Appeal's determination that CALCRIM No. 571 correctly defines imperfect self-defense binds this habeas court. Therefore, Barrera's second claim fails.

////

**C.     Whether the evidence was insufficient to establish that petitioner acted with malice**

The state argues that this claim—claim (3)—is procedurally barred because it is untimely, unexhausted, procedurally defaulted. Alternatively, the state argues that this claim is substantively meritless. As shown below, the claim is untimely. Therefore, for ease of analysis, the court need not consider whether it is unexhausted and/or procedurally defaulted. Yet, even if this claim were not untimely or otherwise procedurally barred, it would still fail on the merits.

### 1.     Whether the claim is untimely

AEDPA imposes a one-year statute of limitations on the filing of federal habeas petitions. 28 U.S.C. § 2244(d)(1). The year commences on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Id. § 2244(d)(1)(A). "Direct review" includes "the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition." Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999). "Therefore, when a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires." Id.

"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under [§ 2244(d)]." 28 U.S.C. § 2244(d)(2). However, § 2244(d)(2) "does not permit the reinitiation of the limitations period that has ended before the state petition was filed." Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003). Nor do federal habeas petitions toll § 2244(d)(1). Duncan v. Walker, 533 U.S. 167, 181–82 (2001).

Federal Rule of Civil Procedure 15 is applicable to federal habeas proceedings. Mayle v. Felix, 545 U.S. 644, 655 (2005). Thereunder, amendments made after the statute of limitations has expired relate back to the date of the original pleading only if the original and amended pleadings arise out the same conduct, transaction, or occurrence. Fed. R. Civ. P. 15(c)(1)(B); see also Mayle, 544 U.S. at 655. The original and amended pleadings arise out of the same conduct,

transaction, or occurrence "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in both time and type from the originally raised episodes." Id.

Thus, applying Mayle, the Ninth Circuit has held that a claim based on "instructions charged to the jury after the close of evidence" do not relate back to a claim based on "the admission of evidence during trial." Hebner v. McGrath, 543 F.3d 1133, 1139 (9th Cir. 2008). The court reasoned that the two claims "depend[ed] upon separate transactions and [did] not share a common core of operative fact." Id.

Here, the California Supreme Court denied review on July 10, 2013. The time period for Barrera to seek a writ of certiorari from the Supreme Court expired ninety days later, on October 8, 2013. Therefore, under § 2244(d)(1)(A), Barrera had until October 8, 2014 to file a habeas petition asserting claims (3) and (4). See Patterson v. Stewart, 251 F.3d 1243, 1246–47 (9th Cir. 2001).

Granted, Barrera filed his original federal habeas petition asserting claims (1)–(5) on September 29, 2014. As discussed, however, his federal petition did not toll § 2244(d)(1). Furthermore, it is undisputed he failed to exhaust claims (3) and (4) before filing this petition. Supra p. 5. Subsequently, on February 18, 2015, Barrera filed a habeas petition in the Solano County Superior Court, which the California Supreme Court ultimately denied on December 16, 2015. Supra p. 5. But, as noted, § 2244(d)(2) does not permit the reinitiation of a limitations period that has ended before the state petition was filed, such as the one here that ended on October 8, 2014.

Barrera filed the operative second habeas petition on February 10, 2016, which was the first petition Barrera filed in this case after attempting to exhaust claims (3) and (4). As this date falls more than a year after October 8, 2014, claims (3) and (4) are untimely.

Claims (3) and (4) do not relate back to claims (1) and (2), which were timely. Barrera bases claims (1) and (2) on an allegedly erroneous jury instruction and claims (3) and (4) on the alleged insufficiency of the evidence. Thus, as in Hebner, claims (1) and (2) relate to "instructions charged to the jury after the close of evidence," whereas claims (3) and (4) relate to

14

"the admission of evidence during trial." Hebner, 543 F.3d at 1139. Granted, the petitioner in Hebner challenged the admissibility of certain evidence, whereas Barrera challenges the sufficiency of the evidence overall. Nevertheless, "the [sufficiency] of evidence [admitted] during trial and the [propriety of] instructions charged to the jury after the close of evidence . . . . depend upon separate transactions and do not share a common core of operative fact." See id. The former claims relate to evidence admitted throughout the trial. The later claims relate to instructions given after the close of evidence. Thus, the sufficiency-of-the-evidence claims are "separate in both time and type" from the jury-instruction claims and, hence, do not relate back to them.

Barrera argues that his appellate counsel provided ineffective assistance by failing to raise claims (3) and (4) in his petition for review before the California Supreme Court. Barrera suggests that these claims would have been timely had his appellate counsel raised them. Therefore, he concludes that the court should consider them despite their ostensible untimeliness.

This argument lacks merit. "[A] criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals." Wainwright v. Torna, 455 U.S. 586, 587 (1982) (citation omitted). And the California Supreme Court reviews petitions for review on a discretionary basis. Cal R. Ct. 8.500.[3] Therefore, because Barrera "had no constitutional right to counsel" to file the petition for review, "he could not [have been] deprived of the effective assistance of counsel by his retained counsel's failure" to raise claims (3) and (4) therein. See Torna, 455 U.S. at 587–88; see also United States v. Angelone, 894 F.2d 1129, 1130 (9th Cir. 1990) (citing cases).

////

////

---

[3]  See also Douglas v. California, 372 U.S. 353, 354 (1963); Hurtado v. Kirkland, 281 F. App'x 724, 726 (9th Cir. 2008); Gatlin v. Madding, 189 F.3d 882, 888 (9th Cir. 1999); Jackson Water Works, Inc. v. Pub. Utils. Comm'n of Cal., 793 F.2d 1090, 1092–93 (9th Cir. 1986); Graves v. Martel, No. 2:06–cv–00885–JKS, 2010 WL 1027466, at *6 & n.44 (E.D. Cal. Mar. 18, 2010) (collecting authority).

15

Barrera does not explicitly argue that § 2244(d) should be equitably tolled.[4] However, this argument would also fail. Section 2244(d) "is subject to equitable tolling in appropriate cases." Holland, 560 U.S. at 645 (collecting cases). But equitable tolling is proper only if the petitioner shows that "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (citation omitted). Such relief is unavailable in most cases, and does not include ordinary cases of negligence. Miranda v. Castro, 292 F.3d 1063, 1066–67 (9th Cir. 2002) (citation omitted); see also Holland, 560 U.S. at 652 (equitable tolling does not apply to an attorney's "garden variety or excusable neglect.").

Here, Barrera has not shown that he was pursuing his rights diligently. For instance, he has not shown that he asked his attorney to include claims (3) and (4) in the petition for review only to be ignored, or that he "repeatedly" complained about his failure to do so. Cf. Holland, 560 U.S. at 652–53. Also, he did not file his state habeas petition until after he filed this case and after the state moved to dismiss on failure-to-exhaust grounds, supra p. 5, and he has not shown that some "extraordinary circumstance stood in his way and prevented [him from doing so earlier]," see Holland, 560 U.S. at 649 (citation omitted).

True, "extraordinary circumstances" may, in appropriate cases, involve "an attorney's failure to satisfy professional standards of care." Id. However, Barrera has not shown that his attorney's failure to include claims (3) and (4) in the petition for review constitutes "egregious behavior [creating] an extraordinary circumstance that warrants equitable tolling." See id. at 651.

---

[4] Arguably, Barrera implicitly raises this argument in his traverse. (ECF No. 42 at 20.) Therein, he asserts that his counsel was ineffective for failing to raise claims (3) and (4) in his petition for review. In appropriate cases, "an attorney's failure to satisfy professional standards of care" may support an equitable tolling defense. See Holland v. Florida, 560 U.S. 631, 649 (2010). Therefore, out of an abundance of caution, the undersigned will consider whether equitable tolling applies. See, e.g., Edison v. Watts, No. CIV–11–455–HE, 2011 WL 3625548, at *2–3 (W.D. Okla. June 28, 2011) (considering whether petitioner was entitled to equitable tolling of § 2254(d) even though he "d[id] [not] . . . even make a request that the Court invoke principles of equitable tolling"), report and recommendation adopted, 2011 WL 3626645, at *1 (W.D. Okla. Aug. 17, 2011); Ramirez v. United States, Civil Action No. L–09–4, 2009 WL 1437833, at *1 (S.D. Tex. May 21, 2009) (citation omitted) ("Although Ramirez did not explicitly raise the issue of equitable tolling, his pro se pleadings are entitled to liberal construction. Therefore, the Court will consider whether equitable tolling is warranted.").

Although the record does not reflect why his attorney failed to include said claims in the petition, this omission may reflect a good-faith belief that the claims did not meet the standard for discretionary review. Cal R. Ct. 8.500(b) ("The Supreme Court may order review of a Court of Appeal decision: (1) When necessary to secure uniformity of decision or to settle an important question of law . . . ."). Accordingly, equitable tolling does not apply in this case.

### 2. Sufficiency of the evidence

When reviewing the sufficiency of the evidence to support a criminal conviction, a federal habeas court must "determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). "But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Id. at 318–19. "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (citation omitted).

"[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam) (citation omitted). Thus, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326.

Here, the California Court of Appeal rejected Barrera's argument that the evidence was insufficient to prove that he acted with malice aforethought. The Court reasoned as follows:

> Barrera asserts there is no substantial evidence he acted with malice aforethought, which, as we explained in the prior section, requires either an intent to kill or knowledge of the danger to, and with conscious disregard for, human life. (*People v. Jeter*, supra, 125 Cal. App. 4th at p. 1216.) He cites to his own testimony denying that he punctured Chavez's eyeball and asserting he fought with Chavez in self-defense.
>
> However, "[t]he fact that a weapon was used in committing a crime may be proved by circumstantial as well as by direct evidence, like any other fact in a case."

(*People v. Long* (1945) 70 Cal. App. 2d 470, 471.)  The evidence showed Chavez did not have a wire in his eye prior to his contact with Barrera.  Barrera, himself, testified he did not notice anything in Chavez's eye before the altercation.  Three correctional officers observed the altercation between Barrera and Chavez.  None of them saw the beginning of the incident, but all saw Barrera repeatedly punching Chavez in the face while Chavez tried to ward off the blows.  Although there was no testimony regarding how the wire got in Chavez's eye, the officers observed it protruding from his eye after they broke up the fight.  This is sufficient evidence from which the jury could conclude Barrera had control of the wire and inserted it into Chavez's eyeball.

Barrera maintains "[e]ven if, arguendo, there was sufficient evidence from which it could be reasonably inferred that [Barrera] in fact had possession of the wire and that he inserted it into Chavez's eye, such does not reflect an intent to kill or an act dangerous to human life undertaken with a conscious disregard for human life.  The object involved in this case was not a gun or a knife, but . . . was a small piece of wire . . . . " However, courts have concluded a pellet gun is capable of inflicting great bodily injury because it "[c]ould expel pellets at speeds in excess of those required to . . . enter an eyeball"  (*People v. Lochtefeld* (2000) 77 Cal. App. 4th 533, 541), and a "four-inch-long sharp and pointed pin" qualified as a deadly weapon because it can be "'lethal' under certain circumstances."  (*People v. Hughes* (2002) 27 Cal. 4th 287, 383.)  While the wire used to puncture Chavez's eyeball was fairly short and not a traditional weapon, the manner in which it was used was sufficient to show conscious disregard for human life.

<u>Barrera</u>, 2013 WL 1802667, at *4.

In this case, Chavez did not have the metal wire in his eye before his altercation with Barrera.  Although they did not see how the altercation started, Officers Viloria and Granadoz observed Barrera on top of Chavez, repeatedly punching him.  They ordered Barrera to stop, but he continued to punch Chavez despite being pepper-sprayed and struck with a baton.  Barrera finally stopped the attack, but only after a roof gunner shot him in the back with a rubber bullet.  Chavez was transported to the hospital due to the severity of his injuries, where a surgeon removed a two-inch metal wire with a sharp point from his eye.  There was also a laceration above the same eye, and both of these wounds were closed with sutures.

Viewing this evidence in the most favorable light, a rational juror could have found that the prosecution proved that Barrera acted with malice beyond a reasonable doubt.  Barrera brutally assaulted Chavez, after which a two-inch wire with a sharp point was lodged in his eye.  Thus, a juror could have rationally inferred that Barrera obtained the wire and fashioned it into a

weapon.  Likewise, a juror could have rationally inferred that Barrera stabbed Chavez in the eye with the wire.  Furthermore, due to the laceration above Chavez's eye and the brutality and persistence of the attack, a juror could have rationally inferred that Barrera was trying to drive the wire deeper into Chavez's eye.  And Chavez had to go to the hospital and have his wounds closed with sutures after the attack, further evidencing its brutality.  On these facts, a juror could have rationally concluded that the prosecution proved beyond a reasonable doubt that Barrera acted with either an intent to kill <u>or</u> knowledge of the danger to, and with conscious disregard for, human life.

Barrera's counterarguments, which the Court of Appeals addressed and rejected, lack merit.  Barrera asserts that Chavez had the wire and stabbed him with it.  However, the correctional officers observed no injuries on Barrera, and Barrera has not shown otherwise.  Further, Barrera asserts that the wire accidentally went into Chavez's eye during the altercation.  However, Barrera has not identified any facts supporting this inference.  And, as discussed, the evidence supports the inference that Barrera stabbed him with it.  Barrera also asserts that Chavez grabbed his arm, which prevented him from stopping the attack when ordered to do so.  However, the fact that he was punching Chavez and continued to do so until struck with a rubber bullet supports a contrary inference, i.e., that he wanted to harm Chavez.  Additionally, Barrera asserts that he had no motive to attack Chavez, but that Chavez had a motive to attack him because of his mistaken designation has a sex offender.  However, the prosecution was "not required to prove that [Barrera] had a motive to commit either of the crimes charged."  ECF No. 33-2 at 162.  Moreover, Barrera's mistaken designation as a sex offender does not compel the inference that Chavez attacked him.  Accordingly, the evidence was sufficient to prove that Barrera acted with malice.

////

////

////

////

////

**D.** **Whether the evidence was insufficient to establish that Barrera did not act in self-defense**

       1.    Whether the claim is untimely

As explained in Part III.C.1, supra, this claim—claim (4)—is untimely. Consequently, it fails.

       2.    Sufficiency of the evidence

Here, the California Court of Appeal rejected Barrera's argument that the evidence was insufficient to prove that he did not act in self-defense. The Court reasoned as follows:

> Barrera further asserts there is insufficient evidence to show he did not act in self-defense. Again, he relies on own testimony. Barrera admittedly touched Chavez first—he testified he said "good morning" and placed his hand over Chavez's shoulder. Chavez turned around and, according to Barrera, "struck" him on the inner elbow. It was not a punch, but "more like a . . . sting, rubber-band type of thing." Barrera claimed he "tried to step back . . . while Mr. Chavez basically approached [him] with his hands up." When asked if he felt he was "in danger of being injured" at that point, Barrera responded "Well, um, it's interesting. When you are in prison, when something like this happens, of course." He then overpowered Chavez by hitting him with his fists. He claimed he was unable to stop beating Chavez because Chavez "grabbed [his] arm at one point, and he wouldn't let go of [him]. To follow orders" by the correctional officers to stop. On the other hand, three correctional officers observed the altercation between Barrera and Chavez. None saw the beginning of the incident, but all saw Barrera repeatedly punching Chavez in the face while Chavez tried to ward off the blows. Barrera was then ordered to stop, then pepper-sprayed, then hit with a baton, and finally fired upon and hit by a rubber bullet before he stopped punching Chavez. This evidence was sufficient to permit the conclusion Barrera was the aggressor, not the victim. (*See People v. Lewis* (2001) 25 Cal. 4th 610, 643 ["Although the evidence is circumstantial, the intent . . . is seldom established with direct evidence but instead is usually inferred from all the facts and circumstances surrounding the crime."].) In sum, there was ample basis on which the jury could conclude Barrera's own testimony that he was acting in self-defense was implausible and reject it. (*See People v. Ramos* (1984) 37 Cal. 3d 136, 149; *People v. Lashley* (1991) 1 Cal. App. 4th 938, 946.)

Barrera, 2013 WL 1802667, at *4.

As stated in Part III.C.2, supra, a rational juror could have inferred from the evidence that Barrera maliciously assaulted Chavez. For similar reasons, a juror could have rationally disbelieved Barrera's testimony that Chavez attacked him and that he was defending himself. See

Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004) (citing cases) ("A jury's credibility determinations are . . . entitled to near-total deference under Jackson.")  Granted, the men initially exchanged blows before Barrera overpowered Chavez.  However, Barrera repeatedly punched Chavez when he was on the ground covering up, and a rational juror could have inferred that he stabbed him in the eye with a makeshift weapon.  Therefore, a juror could have rationally concluded that Chavez was simply trying to defend himself from an attack that Barrera initiated.  Accordingly, the evidence was sufficient to prove that Barrera did not act in self-defense.

**IV.    CONCLUSION**

Barrera has failed to establish that the decision of the California Court of Appeal rejecting his claims was contrary to, or an unreasonable application of, clearly established federal law or was an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  Because Barrera has not satisfied the requirements of § 2254(d), IT IS HEREBY RECOMMENDED that his petition for a writ of habeas corpus be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153, 157 (9th Cir. 1991).

////

////

////

////

////

In the objections, the party may address whether a certificate of appealability should issue in the event an appeal of the judgment in this case is filed. <u>See</u> Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: June 26, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:11
DLB1/prisoner-habeas/barr2260.fr